UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELE LUSSIER,

    Plaintiff,

vs.                                          Case No.  8:21-cv-2386-CEH-TGW

LIFEWORKS WELLNESS CENTER, LLC,

    Defendant.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michele Lussier ("Plaintiff" or "Lussier"), by and through the undersigned counsel, hereby sues Defendant LifeWorks Wellness Center, LLC ("Defendant" or "LifeWorks") and alleges as follows:

### INTRODUCTION

1. This is an action brought pursuant to the Florida Civil Rights Act of 1992, as amended, §760.01 *et seq.*, Fla. Stat. ("FCRA") and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, *et seq*. ("ADA").

## JURISDICTION AND VENUE

2.   This Court has federal subject matter jurisdiction over these claims as Plaintiff states a claim for damages under the ADA.  The Court may assert supplemental jurisdiction over the state law claim.  All administrative prerequisites have been exhausted or excused.

3.   Venue is proper in the Court because all facts material to all claims set forth herein occurred in Pinellas County, Florida.

## PARTIES

4.   Lussier was and is a resident of Pinellas County, Florida.

5.   At all times material to this action, LifeWorks was a limited liability corporation located in Pinellas County, Florida.

6.   At all times material to this action, Lussier was an employee of Defendant pursuant to the terms of all applicable statutes and Defendant was the employer of Lussier pursuant to the terms of all applicable statutes.

## GENERAL ALLEGATIONS

7.   Defendant is a health clinic.

8.   Lussier began working for Defendant on or around September 7, 2007.

9.   Lussier held the position of Public Relations and Marketing Manager.

10. Lussier reported to Tamora German, the Office Manager and Lussier's direct supervisor.

11. In or around June 2019, Lussier was diagnosed with pancreatic cancer.

12. Lussier sought and received medical leave as an accommodation for her new disability.

13. Following this diagnosis, Lussier underwent major surgery to treat her cancer.

14. While she was in the hospital, Lussier kept up with her work remotely and stayed in regular contact with her supervisors, including Tamora German and Dr. David Minkoff, the medical director.

15. Lussier was discharged from the hospital on July 2, 2019, seven days after her surgery. Her surgeon provided her with documentation, which stated she would be disabled for 3 months due to the surgery and incapable of employment during that period.

16. Lussier, however, wanted to return to work as soon as possible and was able to return in person on July 10, 2019 after requesting and receiving an accommodation to work on a part-time basis from 8am-noon as she continued to recover from her surgery.

17. When she returned to work, Lussier was visibly changed: she had lost 25 pounds in three weeks, could not go up and down stairs, and was weak and tired easily.

18. Upon her return to working onsite part-time with Defendant, Lussier was told by Tamora German that she would no longer be managing the two employees she had previously managed.

19. Lussier was also informed by Ms. German that she would no longer have remote access to her email and was asked to copy Ms. German on every email she sent.

20. Additionally, Lussier was informed by Ms. German that Dr. David Minkoff wanted Lussier to "make up the time" that she had spent in the hospital since she had been given paid leave and was told she owed 88 hours of work to the Defendant.

21. When Lussier said this would be very difficult to make up, especially given her continued recovery due to her cancer and surgery, Lussier was told by Ms. German that she had spoken with Dr. Minkoff about the challenge of making up these hours and Defendant would not be paying her weekly bonus until she had "paid back" the money she had received while in the hospital and recovering from surgery.

22. These adverse changes were made due to Lussier's disability and in retaliation for Lussier's requests for the reasonable accommodations (initial leave and then a part-time schedule).

23. Due to all of these adverse changes to her employment, Lussier asked Ms. German about her job security and was told by Ms. German that her job was safe and that Ms. German would tell her "as a friend" if there were anything to worry about and that no such conversations had occurred.

24. Lussier was not informed of any performance or disciplinary concerns and continued to work as diligently as always.

25. On July 26, 2019, Lussier returned to working full-time hours; however, she was still recovering from her surgery and seeking further treatment for her cancer, and she tired more easily than she had before she was disabled.

26. Lussier again asked Ms. German about her job security as she felt more of her responsibilities were being taken away and was again told by Ms. German that there was nothing to worry about and that she would tell Lussier if there were any discussions about replacing her.

27. Lussier was not informed of any performance or disciplinary concerns upon inquiring into the security of her position.

28. Around the same time that she returned to full-time hours, Lussier's oncologist informed her that she would need to undergo a round of chemotherapy, and that without chemotherapy she would have a life expectancy of five years, which Lussier relayed to her supervisor, Ms. German.

29. Lussier's supervisor appeared shocked by this information regarding the seriousness of her prognosis.

30. On July 30, 2019, Lussier worked a long day (from 8am to 6:30pm) and due to the effects such a long day had on her health, on July 31, 2019, Lussier asked Ms. German for permission to leave work at noon to go home and rest and was given that permission by her supervisor.

31. The following day, on August 1, 2019, Lussier was terminated by Tamora German.

32. No reason was given for the termination at the time other than it was "just not working out."

33. Defendant has previously stated, in correspondence to the Pinellas County Office of Human Rights, that Plaintiff was given accommodations due to her disability. This includes time off before and after her surgery and a part-time work schedule when she returned.

34. In addition, it became clear to LifeWorks, based on the discussion about Lussier's prognosis on July 26 and her need to rest following a long work day on July 30, that she would require further treatment for her cancer and that she would require ongoing accommodations to modify her work schedule, like the one she had received on July 31.

35. Prior to her cancer diagnosis and surgery, Lussier had taken only a handful of sick days in her 11-year career. Lussier's request for time off to care for her health, as a reasonable accommodation, was an unwelcomed change to Defendant, which led Defendant to retaliate against Lussier.

36. Additionally, Lussier's changed appearance due to her illness concerned LifeWorks, who strived to provide a healthy and strong image to the public.

37. Prior to her cancer diagnosis and surgery, there had been no documented discipline issues or performance concerns associated with Lussier.

38. When Lussier discussed the adverse changes made to her employment and specifically asked about her job security, she was led to believe her job was secure and that there were no issues to address.

39. Defendant's alleged policy of accommodating disabled employees was a sham, for when it became clear that LifeWorks would need to further accommodate Lussier, she was terminated.

40. While Lussier was not given a reason for her termination, Defendant now claims that she was terminated for violating company policy and ethics.

41. Subsequent to her termination, Lussier learned that Defendant claims that while she was on medical leave, her employer opened an "investigation" into her work performance.

42. Lussier was not informed of this "investigation" or interviewed as part of it, nor was she given any opportunity to respond to any findings or allegations made as part of this investigation.

43. In fact, Lussier did not know about any "investigation" until well after her termination, during the pre-suit administrative process through the Pinellas County Office of Human Rights, at which point she did provide a response to the allegations being made about her work ethics and performance.

44. If there was an "investigation" into Lussier, it was conducted in retaliation for her seeking medical leave and further accommodations as she treated her cancer and recovered from her surgery.

45. The close proximity of her diagnoses and surgery (June 2019), return to work (July 2019), and termination (August 1, 2019) demonstrates a causal connection between her disability and her termination.

46. Further, the timing of the alleged investigation (while she was out on medical leave), the timing of the changes to her job duties (upon her return to work post-surgery), and the timing of her termination (the day after she needed to go home early), demonstrates that these actions were taken in retaliation for the accommodations she sought and Defendant deigned to approve.

47. The fact that Lussier was not informed of any concerns Defendant had with her work performance or ethics when she asked about her job security on two separate occasions and when she was terminated, shows that the proffered reason Defendant is now giving for Lussier's termination is pretext for the true reason: discrimination and retaliation.

48. Rather than continue to accommodate a long-time employee who was newly diagnosed with an aggressive form of cancer, Defendant chose to retaliate against her for seeking these disability-related accommodations by creating a pretextual reason to terminate her.

49. Defendant did not want to continue to employ Lussier – a long-time employee – now that she was visibly changed due to her disability, and has sought and would continue to seek reasonable accommodations due to her disability.

50. At all times material to this action, Lussier had a disability.

51. At all times material to this action, Lussier was a qualified individual.

52. At all times material to this action, Lussier could perform the essential functions of her job with or without an accommodation.

53. All administrative notice requirements and prerequisites have been satisfied.

54. Lussier received a cause determination from the Equal Employment Opportunity Commission and the Pinellas County Office of Human Rights finding that Defendant violated the law.

55. Lussier received a Notice of Right to Sue and this lawsuit is being filed within 90 (ninety) days of the issuance of the notice.

56. Lussier has retained the services of the undersigned attorneys and is obligated to pay the undersigned a reasonable fee for their services.

57. Lussier demands a trial by jury on all claims alleged herein.

## COUNT I
## FLORIDA CIVIL RIGHTS ACT DISCRIMINATION

58. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 57 as if fully stated herein.

59. Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known handicap, and/or because Defendant regarded her as having a handicap, and/or because of Plaintiff's record of having a handicap in violation of the Florida Civil Rights Act.

60. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a)     Back pay and benefits;

    b)     Front pay and benefits;

    c)     Compensatory damages;

    d)     Punitive damages;

    e)     Interest;

    f)     Reasonable attorney fees and costs; and

    g)     Any other relief this Court or the jury deems just and equitable.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT RETALIATION

61. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 57 as if fully stated herein.

62. Defendant engaged in unlawful employment practices and retaliated against Plaintiff because she sought accommodations for leave, a modified work schedule, and time off as needed due to her handicap in violation of the Florida Civil Rights Act.

63. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

h) Back pay and benefits;

i) Front pay and benefits;

j) Compensatory damages;

k) Punitive damages;

l) Interest;

m) Reasonable attorney fees and costs; and

n) Any other relief this Court or the jury deems just and equitable.

## COUNT III
## AMERICANS WITH DISABILITIES ACT DISCRIMINATION

64. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 57 as if fully stated herein.

65. Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act.

66. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a) Back pay and benefits;

b) Front pay and benefits;

c) Compensatory damages;

d) Punitive damages;

e) Interest;

f) Reasonable attorney fees and costs; and

g) Any other relief this Court or the jury deems just and equitable.

## COUNT IV
## AMERICANS WITH DISABILITIES ACT RETALIATION

67. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 57 as if fully stated herein.

68. Defendant engaged in unlawful employment practices and retaliated against Plaintiff because she sought accommodations for leave, a modified work schedule, and time off as needed due to her disability in violation of the Americans with Disabilities Act.

69. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a) Back pay and benefits;

    b) Front pay and benefits;

    c) Compensatory damages;

    d) Punitive damages;

    e) Interest;

    f) Reasonable attorney fees and costs; and

    g) Any other relief this Court or the jury deems just and equitable.

## REQUEST FOR JURY TRIAL

Plaintiff requests trial by jury on all issues so triable.

Respectfully submitted,

/s/ Michelle Erin Nadeau
**Ryan D. Barack**
Florida Bar No. 0148430
rbarack@employeerights.com
Jackie@employeerights.com
**Michelle Erin Nadeau**
Florida Bar No. 0060396
mnadeau@employeerights.com
Jackie@employeerights.com
**Kwall Barack Nadeau PLLC**
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished via the Court's CM/ECF system on July 15, 2022 to all counsel of record.

/s/Michelle Erin Nadeau
Attorney

15