UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELE LUSSIER,

    Plaintiff,

v.                                        Case No. 8:21-cv-02386-CEH-TGW

LIFEWORKS WELLNESS
CENTER, LLC,

    Defendant.
_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Michelle Lussier ("Plaintiff" or "Lussier"), by and through her undersigned counsel and pursuant to Fed.R.Civ.P 56, hereby moves for partial summary judgment and requests that the Court find, as a matter of law, that (1) Plaintiff has a disability as defined by the Americans with Disability Act and the Florida Civil Rights Act (which uses the term "handicap") and that (2) Plaintiff is a qualified individual as defined by the Americans with Disability Act and the Florida Civil Rights Act.

These issues are based on undisputed facts and entering summary judgment as to these discrete issues will help narrow the remaining issues – causation and damages – presented to the jury at trial. In support of this motion, Plaintiff offers the following statement of undisputed facts and memorandum of law.

## STATEMENT OF UNDISPUTED FACTS[1]

1. Lussier began working for Defendant Lifeworks Wellness Center, Inc. ("Defendant" or "Lifeworks") in 2007.  [Exhibit 1 – Excerpts from the Deposition of Michele Lussier (hereinafter "Lussier Dep") 35:13-15].[2]

2. While her paycheck originally came from BodyHealth, another entity, she was performing services for Lifeworks from the start of her employment. [Lussier Dep 36:14-17; 41:16-20; Lussier Dep Ex. 11 ("[s]he has been with us since 2007")].

3. In time, Lussier began being paid by Lifeworks.  [Lussier Dep 46:14-22].

4. In the underlying administrative proceedings, Lifeworks originally agreed that Plaintiff had been an employee since September 7, 2007 and then "corrected" its response to explain that her employment was "transferred from the BodyHealth company to the LifeWorks company on December 21, 2013." [Exhibit 2 – Lifeworks Position Statement (hereinafter "Position Statement" at p. 1 &

---

[1] After several delays [as explained in detail in Doc. 35], Plaintiff was scheduled to take the depositions of Defendant's witnesses on September 29 and 30, 2022, with leave of Court [Doc. 51]. Unfortunately, these had to be delayed due to Hurricane Ian. While this is immaterial to this motion, as the relief sought in this motion is narrowly tailored and based on clearly undisputed facts, it is being noted by way of explanation as to why only Plaintiff's depositions and Defendant's Position Statement and Position Statement Supplement are relied upon as summary judgment evidence.

[2] Deposition references are to page and line number or to the deposition exhibit.

Exhibit 3 – Supplemental Response to Position Statement (hereinafter "Position Statement Supplement" at p. 1)].[3]

5. It is undisputed that during the period in which BodyHealth paid Plaintiff, she was performing work for Lifeworks and, in any event, Lussier had been an official employee of LifeWorks since at least 2013. [Id.]

6. At the time of her termination, Plaintiff held the position of Public Relations & Marketing Manager. [Position Statement p. 1; Lussier Dep 50:14-17].

7. Lussier had been working in the public relations and marketing role for the entirety of her tenure and was promoted to a management position in or around January 2018. [Lussier Dep 49:12-50:17; 157:14-158:17; Lussier Dep Ex. 11].

8. In June 2019, Plaintiff was diagnosed with pancreatic cancer. [Lussier Dep 50:18-22].

9. Plaintiff had a cancerous tumor on her pancreas that was blocking the common bowel duct, which required Whipple surgery to remove. [Lussier Dep 53:8-12].

10. The surgery successfully removed this cancerous tumor. [Lussier Dep 53:13-14].

---

[3] Although Plaintiff does not expect Defendant to dispute these facts, to the extent necessary, the position statement may be treated as an admission. See *Whitlow v. WestRock Services, LLC*, 3:20-CV-00451-SRW, 2021 WL 5999030, at *2 (M.D. Ala. Dec. 20, 2021)(declining to strike position statement and recognizing that an EEOC Position Statement may be used as an admission).

11. Lussier was discharged from the hospital on July 2, 2019, returned to work on a part-time basis on July 10, 2019, and returned to work full-time on July 26, 2019. [Lussier Dep 77:24-78:1; 90:7-10].

12. Following the surgery, an oncologist told Lussier that the life expectancy for a person with this type of cancer is three to five years and that her best chance of survival was to undergo chemotherapy. [Lussier Dep 59:19-60:8].

13. At that time, Lussier was exploring all of her treatment options including meeting with an oncologist and then consulting with Lifeworks, intending to receive alternative treatment there. [Lussier Dep 59:19-63:1]. This did not happen because she was terminated. [Lussier Dep 62:14-63:1].

14. Lussier further testified that it took her two to three months to regain her full energy and recover from the surgery. [Lussier Dep 63:7-11].

15. Plaintiff was terminated on August 1, 2019. [Lifeworks Position Statement; Lussier Dep 14:15-17].

## MEMORANDUM OF LAW

### I. Summary Judgment Standard

Summary judgment is proper if the record evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those items that the party believes demonstrates the absence of any genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party bears the burden of coming forward with evidence of each

essential element of its defenses such that a reasonable jury could find in its favor. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077 1080 (11th Cir. 1990).

An issue of fact is "material" if it could affect the outcome of the case. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir.2004)(citations omitted). The opposing party must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson Corp.*, 357 F.3d at 1260, *quoting Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co.,* 475 U.S. at 587 (internal quotation marks omitted).

To plead a *prima facie* case of disability discrimination under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, *et. seq.* ("ADA"), a plaintiff must show that, at the time of the adverse employment action, she (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful discrimination because of her disability. 42 U.S.C. §§ 12112(a); *Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). Disability discrimination under the Florida Civil Rights Act ("FCRA") is analyzed under the same framework as ADA claims. *Carlson v. Liberty Mutual Insurance*, 237 Fed.

5

Appx. 446, 448 (11th Cir. 2007)("A disability discrimination claim brought under the FCRA is analyzed under the same framework as ADA claims.").

Here, Plaintiff seeks summary judgment as to these first two elements of her *prima facie* case: (1) the fact that Plaintiff was disabled at the time of her termination and (2) the fact that Plaintiff was a qualified individual with respect to the position she had previously held. These issues are material, as they are elements of Plaintiff's *prima facie* case, and the underlying facts are undisputed. Therefore, summary judgement is appropriate.

**II.     The Undisputed Evidence Shows that Plaintiff Was Disabled as Defined by the Americans with Disabilities Act.**

As noted above, the first element of a *prima facie* case of disability discrimination that Plaintiff must establish is that she had a disability at the time of the alleged adverse action. It cannot be disputed that, at the time of her termination, Plaintiff had recently been diagnosed with cancer and therefore was disabled and the Court should hold that Plaintiff had a disability as a matter of law.

    *A.     Disability is Broadly Defined and "Should Not Demand Extensive Analysis"*

The definition of disability is broad: under the ADA, "disability" means (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" or (2) "a record of such an impairment" or (3) "being regarded as having such an impairment. 42 U.S.C. §12102(1); 29 C.F.R. § 1630.2. The ADA was amended in 2008 primarily to "make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1. The ADA

now requires courts interpreting the statute to construe disability "in favor of broad coverage of individuals ... to the maximum extent permitted" by its terms. 42 U.S.C. § 12102(4)(A).  Indeed, emphasizing this breadth of coverage was one of the central ideas animating the amendments. *See* Pub. L. 110-325, § 2(b)(1), 122 Stat. 3553, 3554 (noting that the purposes of the ADAAA include "reinstating a broad scope of protection to be available under the ADA").  Indeed, the purposes of these changes in broadening coverage were to turn the focus on the actions of the employer rather than on the individual's disability:

> The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis.

29 CFR § 1630.1.

Accordingly, courts have repeatedly held that the 2008 amendments (sometimes referred to as the "ADAAA") had a significant impact upon the analysis of disability. *See e.g., Dykstra v. Fla. Foreclosure Attorneys, PLLC*, 183 F. Supp. 3d 1222, 1231 (S.D. Fla. 2016)("The Court rejects Defendants' argument to the contrary as it is based on standards predating the ADAAA and its regulations."); *Nails v. Spirit Airlines Inc.*, No. 17-62172-CIV-COOKE, 2018 WL 1863623, at *2 (S.D. Fla. Feb. 15, 2018), *report and recommendation adopted*, No. 17-62172-CIV, 2018 WL 1859309 (S.D. Fla. Mar. 8, 2018)(noting that under old ADA it was clear that a sprained ankle did not qualify as a disability but that under the

7

new definition, "a sprained ankle could indeed qualify as a disability under the ADAAA.").

    B.    *Cancer Substantially Limits Normal Cell Growth.*

Importantly, the statutory definition of major-life activities was expanded to encompass "major bodily functions" which "includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. §12102(2)(B). The regulations implementing the amendments to the ADA specifically note that "it should easily be concluded" that certain types of impairments "will, at a minimum, substantially limit the major life activities as indicated" and includes, among those certain types of impairments, that "cancer substantially limits normal cell growth." 29 C.F.R. § 1630.2(j)(3)(ix)(iii). These regulations state that for these types of impairments, which include cancer, "the individualized assessment…will, in virtually all cases, result in a determination of coverage under paragraphs (g)(1)(i) (the "actual disability" prong) or (g)(1)(ii) (the "record of" prong) of this section" and that "[g]iven their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity." 29 C.F.R. § 1630.2(j)(3)(ii). "Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward." *Id.*

Further, where an impairment "substantially limits one major life activity, such as normal cell growth, it need not limit other major life activities, such as

8

working, in order to be considered a disability." *Lonergan v. Dep't of Corr. Sec'y Julie Jones*, No. 4:14CV42-MW/CAS, 2017 WL 1197869, at *8 (N.D. Fla. Feb. 28, 2017), *report and recommendation adopted sub nom. Lonergan v. Jones*, No. 4:14CV42-MW/CAS, 2017 WL 1202660 (N.D. Fla. Mar. 30, 2017)(internal citations and quotations omitted); 29 U.S.C. §12102(4)(C)( noting that "an impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability" and finding that precancerous skin condition, like cancer itself, may also limit cell growth).

There is no dispute that Plaintiff had cancer. Since cancer substantially limits normal cell growth, a major life activity, cancer is a disability. Additionally, the pancreas and bile ducts are part of the digestive system so the specific type of cancer Plaintiff had also limited another major life activity: digestive functions.

C.  *Plaintiff's Successful Surgery Does Not Affect This Analysis.*

During her deposition, Defendant focused on the "success" of Plaintiff's surgery, and Plaintiff anticipates an argument that she was not disabled at the time of her termination based on this line of questioning. However, an individual who has been diagnosed with cancer, even if that cancer is in remission, is considered to be an individual with a disability. Per the plain language of the statute, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C.A. § 12102 (4)(D).

Similarly, there can be no argument that Plaintiff's cancer was too short-lived or had not progressed enough to be a disability. "The six-month 'transitory' part of the 'transitory and minor' exception to 'regarded as' coverage in §1630.15(f)

does not apply to the definition of "disability" under paragraphs (g)(1)(i) (the "actual disability" prong) or (g)(1)(ii) (the "record of" prong) of this section." 29 C.F.R. § 1630.2(j)(1)(ix). An impairment that lasts or is expected to last fewer than six months can still be substantially limiting. *Id*. The severity and length of time of her cancer, her prognosis, and her surgery results are all irrelevant to the question of whether Plaintiff had a disability at the time of her termination. The undisputed evidence shows that Plaintiff was diagnosed with cancer in June 2019 and was terminated less than two months later. Furthermore, Plaintiff was still seeking treatment for her cancer at the time of her termination: she had sought treatment from an oncologist who recommended chemotherapy and had intended to seek an alternative treatment at the Lifeworks clinic.

  D. *Cancer is a Disability.*

Cancer is a disability, whether or not it limits any other activity and whether or not it is "active," and courts have regularly ruled as such. *Weed v. Sidewinder Drilling, Inc.*, 245 F. Supp. 3d 826, 853 (S.D. Tex. 2017)(finding that "under the ADAAA, cancer, even when in remission, is a 'disability' that substantially limits the major life activity of 'normal cell growth'" and denying summary judgment); *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1185 (E.D. Tex. 2011)(denying summary judgment and finding that renal cancer, when active, substantially limits the major life activity of normal cell growth and qualifies as a disability even if no other major life activity is limited and even when it is in remission); and *Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F. Supp. 2d 976, 985 (N.D. Ind. 2010)(denying summary judgment and holding that "this Court must

find" that the employee was disabled because cancer in remission is a disability and plaintiff "does not need to show that he was substantially limited in a major life activity at the actual time of the alleged adverse employment action").

The undisputed evidence is that Plaintiff was diagnosed with cancer in June of 2019, had surgery to treat this cancer in June of 2019, returned to work in July of 2019, was seeking continued treatment of her cancer both outside and within Defendant's clinic, and was terminated on August 1, 2019. Her termination occurred less than two months after her diagnoses and surgery, within a month of her returning to work on a part-time basis, and within a week of her returning to work on a full-time basis.

Defendant is unable to produce any evidence that Plaintiff was not diagnosed with cancer in June 2019 or that her cancer did not substantially limit a major life activity. Cancer is a disability because it substantially limits normal cell growth and this Court must find, as a matter of law, that Plaintiff was disabled at the time of her termination in 2019.

## III. The Record Evidence Shows That Plaintiff Is a Qualified Individual.

The next element of her *prima facie* case is whether Plaintiff is a qualified individual. "Determining whether an individual is 'qualified' for a job is a two-step process." *Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th Cir. 2000). "First, does the individual satisfy the prerequisites for the position; does the individual have sufficient experience and skills, an adequate educational background, or the appropriate licenses for the job? *Id*. Second, can the individual perform the essential functions of the job, either with or without reasonable

11

accommodations?" *Id*. Here, the two-step inquiry would focus on (1) whether Plaintiff was qualified to work as a Public Relations Manager, a job which Plaintiff had been performing for a lengthy period of time and which Defendant had previously deemed her qualified for and (2) whether Plaintiff could perform the essential functions of the job with or without an accommodation. Thus, if an accommodation could render her capable of performing the job, she remains a qualified individual.

In cases where an employee has previously held a position, there is usually no question that she is qualified for that position. *See Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001)("We have recognized that in termination cases, the question of whether the plaintiff was qualified to do the job is not often at issue."); *Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1386 (11th Cir. 1983)("where a plaintiff has held a position for a significant period of time, qualification for *that* position, sufficient to satisfy the test of a prima facie case can be inferred.").

Lussier had been performing the role of Public Relations Manager since at least January of 2018 and had been working in the public relations and marketing role without any employees under her since she was hired. Thus, she was qualified for that position.

Further, there is no evidence that her cancer diagnoses or surgery rendered her incapable of continuing to perform the essential functions, with or without an accommodation, of this job which she had held for years. In fact, she had returned to work full-time the week prior to her termination.

Thus, it is undisputed that Lifeworks viewed her as qualified for this job prior to her becoming disabled. This job was not a new job, but one she had been performing and there is no evidence that she could not continue to perform the essential functions of her job, despite her cancer diagnosis.

To the degree Lifeworks now claims a decline in work performance which led to her termination, that is an issue for the pretext phase of the analysis, and not relevant to the issue of whether she was qualified. *See Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1300 (11th Cir. 2015)("Employer justifications become relevant only after the plaintiff has made his prima facie case" and "[[w]hen it found that Liebman was not qualified for his position based on MetLife's proffered reasons for firing him, the district court conflated the burden shifting stages of the *McDonnell Douglas* framework"); *Crapp*, 242 F.3d at 1020 ("allegations of poor performance against plaintiffs discharged from long-held positions may be properly considered…when a court evaluates the pretextual nature of an employer's proffered nondiscriminatory reasons for termination.")(citing *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 n. 2 (11th Cir.1987)). Plaintiff is seeking a ruling that, as a matter of law, she was a qualified individual for purposes of establishing that prong of her *prima facie* case. Alleged poor performance does not render an individual unqualified for a position they had previously held for a lengthy period of time. It is only after she establishes her *prima facie* case that any allegations of poor performance would need to be evaluated in the context of the burden-shifting analysis and that is not currently before the Court on this limited motion for partial summary judgment.

Thus, the undisputed evidence shows that Plaintiff, by virtue of having held this position for so long prior to her termination and having not been rendered incapable of performing it by her disability, was a qualified individual.

## CONCLUSION

For the reasons outlined above, Plaintiff respectfully requests this Court grant partial summary judgment and find as a matter of law that Plaintiff is disabled and is a qualified individual for purposes of the Americans with Disabilities Act and the Florida Civil Rights Act.

Respectfully submitted,

/s/Michelle Erin Nadeau
**Ryan D. Barack**
Florida Bar No. 0148430
rbarack@employeerights.com
Jackie@employeerights.com
**Michelle Erin Nadeau**
Florida Bar No. 0060396
mnadeau@employeerights.com
Jackie@employeerights.com
**Kwall Barack Nadeau PLLC**
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
(727) 441-4947
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished via the Court's CM/ECF system on October 3, 2022 to all counsel of record.

/s/Michelle Erin Nadeau